## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

LANCE STOUT, individually, and as Guardian
of C.S., a minor child, as Administrator of the Estate
of Stacey Michelle Stout and as individuals, and
BARBRE STOUT, individually, and as Guardian
of C.S., a minor child, as Administrator of the Estate
of Stacey Michelle Stout and as individuals

               Plaintiffs,

v.                                       Case No. 13-cv-753-WPJ

STATE OF OKLAHOMA ex rel. OKLAHOMA
HIGHWAY PATROL; et al.,

               Defendants,

consolidated with

THERESA STOUT, as personal representative of the
Estate of Christopher Stout,

               Plaintiff,

v.                                       Case No. 14-cv-427-WPJ

OKLAHOMA HIGHWAY PATROL TROOPER
DANNY LONG, et al.,

               Defendants.

## MEMORANDUM OPINION AND ORDER
## OVERRULING PLAINTIFF'S OBJECTIONS TO UNITED STATES' SUBSTITUTION,
## DENYING PLAINTIFF'S MOTION FOR DISCOVERY, AND
## GRANTING IN PART AND DENYING IN PART
## UNITED STATES' MOTION TO DISMISS

      THIS MATTER comes before the Court upon Defendant United States of America's

Motion to Dismiss (**Doc. 52**), filed on September 8, 2014; Plaintiff Theresa Stout's Response to

Defendant United States' Motion to Dismiss and her Objection to United States' Certification

**(Doc. 63)**, filed September 29, 2014; and Plaintiff's Motion for Discovery on United States' Certification **(Doc. 65)**, filed September 30, 2014, as well as all responsive briefing thereto.[1] Having reviewed the parties' briefs and applicable law, the Court finds that Plaintiff's objections are not well taken and, therefore, are **OVERRULED**; that Plaintiff's motion is not well taken and, therefore, is **DENIED**; and that the United States' motion is well taken in part and, therefore, is **GRANTED IN PART AND DENIED IN PART** as herein described.

## BACKGROUND

Unless otherwise stated, the following factual allegations are taken from Plaintiff's First Amended Complaint and are accepted as true for purposes of analyzing the Unites States' Motion to Dismiss. On the evening of April 9, 2013, seven individual Defendants named in this action conducted a law enforcement action targeting decedent Christopher Stout.[2] These Defendants included Danny Long, an Oklahoma Highway Patrol Trooper; James Leone, an Oklahoma Narcotics and Dangerous Drugs Agent; Chad Pope and Ed Grimes, sheriffs' deputies from Pottawatomie County and Canadian County, respectively; Kevin Johnson, an Oklahoma City Police Sergeant; and Callen Stephens and Tarran Groom, Deputy United States Marshals.

That evening, the individual Defendants attempted to serve an arrest warrant on Stout for a state-law burglary charge arising from Payne County, Oklahoma. Stout attempted to drive away with his girlfriend in his vehicle, but the individual Defendants successfully performed a tactical maneuver to stop Stout's vehicle and surrounded him with their own cars. The individual

---

[1] After the majority of the documents at issue here were filed, Theresa Stout's lawsuit was consolidated with another action brought by Lance and Barbre Stout concerning the same underlying events. *See* **(13-cv-753 Doc. 56)**. For purposes of this Memorandum Opinion and Order, the term "Plaintiff" refers to Theresa Stout, and any citation to the docket refers to the document number in the subordinate case, 14-cv-427-WPJ, unless otherwise specified.

[2] Both decedents in the consolidated cases bear the last name "Stout," as do the representatives of their respective estates. Unless otherwise stated, the Court uses the name "Stout" to refer to Christopher Stout.

Defendants then exited their cars and fired their weapons at Stout's vehicle. Stout was pronounced dead at the scene, and his girlfriend died at a hospital some time later.

The United States later claimed, and Plaintiff does not dispute, that Long, Leone, Pope, Grimes, Johnson, Stephens, and Groom were working as members of a U.S. Marshals Service Metro Fugitive Task Force at the time of Stout's death. *See* **(Doc. 52)**, Motion to Dismiss, at 1; **(Doc. 63)**, Response Brief, at 10. Plaintiff, Stout's mother, filed a Claim for Damage, Injury, or Death with the U.S. Marshals Service in July 2013. In that document, Plaintiff alleged that "[t]he U.S. Marshal Metro Fugitive Task Force shot and killed" Stout and that he "was shot multiple times by members of the U.S. Marshal Metro Fugitive Task Force, which include[d] one or more members of the U.S. Marshals." **(Doc. 52 Ex. 1)**.

Plaintiff filed her original complaint in April 2014, bringing claims of violations of the United States Constitution under 42 U.S.C. § 1983, violations of the Oklahoma Constitution, and violations of common law. The Defendants named in this initial complaint included Long, Leone, Pope, Grimes, and Johnson in their individual and official capacities, as well as the state, county, and local entities that employed them.

Shortly thereafter, the United States filed a Notice of Substitution Pursuant to 28 U.S.C. § 2679(d)(1). In that document, the United States Attorney for the Western District of Oklahoma certified that Long, Leone, Pope, Grimes, and Johnson were employed as Special Deputy U.S. Marshals and were acting on behalf of a federal agency in an official federal capacity at all relevant times. As such, the United States asserted that it should be substituted as the proper Defendant for all claims against those individuals except for the individual-capacity § 1983 claims. **(Doc. 5)**, United States' Notice of Substitution Pursuant to 28 U.S.C. § 2679(d)(1).

The United States subsequently filed a motion to dismiss, arguing that the Court lacked subject-matter jurisdiction over the claims against it. Plaintiff then filed a motion for leave to amend her complaint, and she attached a proposed amended pleading that added Stephens and Groom as Defendants in their individual capacities and that included additional factual allegations. In subsequent briefing, Plaintiff acknowledged that she intended to challenge the United States' Notice of Substitution for the individual Defendants at some point in the future. The Court struck the United States' motion and granted Plaintiff's motion in August 2014, observing that the new allegations in the proposed amended complaint "lay a factual predicate for Plaintiff to challenge the certification of the Attorney General." However, the Court advised that "until the Court rules otherwise, the United States is a defendant in this action and any filed Amended Complaint should reflect that status." **(Doc. 35)**, Memorandum Opinion and Order. Plaintiff filed the operative First Amended Complaint ten days later. **(Doc. 36)**, First Amended Complaint.

Not long thereafter, the United States filed a second Notice of Substitution, asserting that it is the proper Defendant for all claims against Stephens and Groom except for the individual-capacity § 1983 claims. **(Doc. 51)**, United States' Notice of Substitution Pursuant to 28 U.S.C. § 2679(d)(1). The United States simultaneously filed the instant motion to dismiss. **(Doc. 52)**. In her timely response brief in opposition, Plaintiff for the first time raised objections to the United States' Notices of Substitution **(Doc. 63)**, and she filed a motion for discovery on the United States' substitution the following day **(Doc. 65)**.

## I.     United States' Substitution as Defendant

In her response to the United States' motion to dismiss, Plaintiff raises her objections to the substitution of the United States as the proper Defendant for most of the claims against the individually named Defendants. Since the propriety of the United States' motion to dismiss hinges on whether the United States is properly a party to this action, the Court addresses these objections first. *See Osborn v. Haley*, 549 U.S. 225, 252-53 (2007) (noting that questions regarding certification under the Westfall Act "should be decided at the earliest opportunity").

### A.  Request to Strike

The United States first argues that the portion of Plaintiff's response brief objecting to its certification should be stricken for violating LCvR 7.1(c), which states that "[a] response to a motion may not also include a motion or cross-motion made by the responding party." Notably, the same rule also says, "If a party responding to a motion files a cross-motion or other closely-related motion concurrently with the filing of the response, the brief in support of the cross-motion or other closely-related motion may be combined with the responsive brief." *See* LCvR 7.1(c). Although Plaintiff did not file her objections as a separate concurrent motion or document, the issue of whether substitution was appropriate is undoubtedly integral to whether the Court should dismiss the claims in question. The Court believes that it is sufficiently apprised of the parties' position on all relevant issues through the briefing that it has received. Therefore the Court will not strike Plaintiff's objections.

### B.  Westfall Act Certifications

The Westfall Act, 28 U.S.C. § 2679(d)(1), is "a measure designed to immunize covered federal employees not simply from liability, but from suit." *See Osborn*, 549 U.S. at 238. One

method by which the Westfall Act accomplishes this goal is to set a procedure by which the United States may substitute itself as a defendant in place of certain federal employees in federal civil cases:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). In essence, when seeking to invoke the Westfall Act, the United States must certify that (1) the defendant for whom it wishes to substitute itself was a federal employee, and (2) that the employee was "acting within the scope of his office or employment" at relevant times. *See id.*

Still, "the Attorney General's certification that a federal employee was acting within the scope of his employment . . . does not conclusively establish as correct the substitution of the United States as defendant in place of the employee." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995). Although such certification creates a presumption that the Westfall Act applies, that presumption may be rebutted by a party challenging the certification. *See, e.g.*, *McAdams v. Reno*, 64 F.3d 1137, 1145-46 (8th Cir. 1995); *AAA Pharmacy, Inc. v. Palmetto GBA, LLC*, No. CIV-07-1221-F, 2008 WL 5070958, at *3 (W.D. Okla. Nov. 24, 2008) (unpublished) ("[T]he government's certification constitutes *prima facie* evidence that the defendants acted within the scope of their employment for the United States . . . ."). In other words, Plaintiff bears the burden to come forward with "specific facts" rebutting the United States' Westfall Act certification. *See Richman v. Straley*, 48 F.3d 1139, 1145 (10th Cir. 1995); *see also Borneman v. United States*, 213 F.3d 819, 827 (4th Cir. 2000) (citation omitted) (setting a preponderance-of-the-evidence standard); *Daugherty v. United States*, 212 F. Supp. 2d 1279,

1285 (N.D. Okla. 2002) ("[Westfall Act] certification continues to shift the burden to plaintiffs to show that the employee was not acting within the scope of employment."). Only when the plaintiff produces evidence that an employee was not acting in the scope of his employment does the United States need to produce evidentiary support for its certification. *See Singleton v. United States*, 277 F.3d 864, 870-71 (6th Cir. 2002); *Daugherty*, 212 F. Supp. 2d at 1285.

Plaintiff is ambiguous as to whether she concedes that Long, Leone, Pope, Grimes, and Johnson were federal employees for Westfall Act purposes. *Compare* (**Doc. 63**), Response Brief, at 4 (conceding that federal statute "provides the presumption that all state actors who were cross-deputized may enjoy the same protections as a federal employee against claims of civil rights violations"), *with id.* at 8 ("Without the details of the agreement with the federal task force, the question remains as to the status of the employees on loan in this case . . . ."). What is clear is that Plaintiff has not provided any specific facts to rebut the United States' certification that this is the case. Moreover, both parties cite federal law supporting the United States' certification. *See* 5 U.S.C. § 3374(c)(2) (cited by Plaintiff as establishing that state or local actors on detail to a federal agency are employees of that agency for Federal Tort Claims Act purposes); 28 U.S.C. § 2671 (cited by the United States to establish the same); *see also Lurch v. United States*, 719 U.S. 333, 337 (10th Cir. 1983) ("[I]t is well settled that the question whether one is an employee of the United States is to be determined by federal law.")

The same infirmity damns Plaintiff's argument that Long, Leone, Pope, Grimes, Johnson, Stephens, and Groom were not acting within the scope of their federal employment. "'[S]cope of employment' [for § 2679(d)(1) purposes] is defined by the respondeat superior law of the state where the incident occurred." *Richman*, 48 F.3d at 1145 (citation omitted). In Oklahoma, "one acts within the scope of employment if engaged in work assigned, or if doing that which is

proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business." *Nail v. City of Henryetta*, 911 P.2d 914, 917 (Okla. 1996). "An employee's act is within the scope of employment if it is incident to some service being performed for the employer or arises out of an emotional response to actions being taken for the employer." *Id.* at 918 (quotation omitted). Whether an employee has acted within the scope of his employment is a question of fact "except in cases where only one reasonable conclusion can be drawn from the facts." *Id.*

Plaintiff has presented no specific facts to rebut the United States' prima facie evidence on these factors. For instance, she does not dispute in her objections that state, county, and local law enforcement officers can be employed to effect a county-level arrest warrant as part of a joint federal-state task force. *See* 28 U.S.C. § 566 note ("establish[ing] permanent Fugitive Apprehension Task Forces consisting of Federal, State, and local law enforcement authorities . . . to be directed and coordinated by the United States Marshals Service, for the purpose of locating and apprehending fugitives"); *id.* § 566(e)(1)(B) (permitting marshals to "investigate such fugitive matters . . . as directed by the Attorney General"); *see also* 5 U.S.C. § 3374(c); 21 U.S.C. § 878(a). Further, although she asserts that "the primary goal [of the task force's actions] was not pursuant to a . . . *strictly* federal interest," *see* **(Doc. 58)**, Response Brief, at 8 (emphasis added), Plaintiff does not present any specific facts to dispute that these individuals were "engaged in work assigned" by the United States or that their actions were not "incident to some service being performed for" the United States. *See Nail*, 911 P.2d at 917-18.

In her unsworn objections, Plaintiff points out that the arrest warrant for Stout was issued by a county judge and states that, "[u]pon information and belief, the [individual] actors utilized their state issued vehicle and equipment during the execution of the warrant." However, given

the overall context of the situation—where five local law enforcement officers, most of whom were outside of their normal jurisdiction, worked with two deputy marshals as part of a joint federal-state task force under statutory authority granted to the Attorney General—these sorts of averments do not rise to the level of "specific facts" necessary to rebut the United States' prima facie support for substitution under § 2679(d)(1). *See Richman*, 48 F.3d at 1145.

Finally, Plaintiff cites several pages' worth of caselaw considering whether officers may have been acting "under color of state law" for purposes of liability under 42 U.S.C. § 1983. Several of these cases are unpublished, and all of them are from outside of the Tenth Circuit. And either way, none of these authorities deal with certification under the Westfall Act. Even if these cases could be deemed in any way persuasive or relevant to certification under §2679(d)(1), the only decision cited by Plaintiff to touch specifically on scope-of-employment questions ultimately determined that local officers deputized as federal agents could be operating as both state and federal employees at once. *See Guzman v. United States*, No. 11 Civ. 5834(JPO), 2013 WL 543343, at *10 (S.D.N.Y. Feb. 14, 2013) (unpublished) ("[I]t seems evident that the task force furthered the goals of the City just as much as it did those of the federal government."). Plaintiff's discussion of irrelevant, non-binding, non-persuasive caselaw from outside this circuit does nothing to relieve her of her burden to provide specific facts rebutting the United States' certification under the Westfall Act.

Normally a hearing would be required to resolve any disputed issues of fact concerning scope-of-employment questions under the Westfall Act. *See Fowler v. United States*, 647 F.3d 1232, 1241 (10th Cir. 2011). In this case, however, no hearing is necessary, as "only one reasonable conclusion can be drawn from the facts." *Nail*, 911 P.2d at 918; *see Singleton*, 277 F.3d at 871 ("[N]o hearing is needed where even if the plaintiff's assertions were true, the

complaint allegations establish that the employee was acting within the scope of his/her employment." (citation omitted)). The United States' certification created a presumption that its substitution under the Westfall Act was proper, and Plaintiff has failed to rebut that presumption. Accordingly, Plaintiff's objections on this point are overruled.

C.  Motion for Discovery

Relatedly, Plaintiff filed a motion for discovery on the limited issue of the United States' Westfall Act certification. *See* (**Doc. 65**), Motion for Discovery. Plaintiff seeks a vast amount of information and documentation, including the policies and procedures for each federal, state, county, and/or local governing body employing the individual Defendants; any correspondence relating to the task force itself; any records on the individual Defendants' training on U.S. Marshals Services policies and procedures; all reports on the Oklahoma City Police Department's investigation of Stout; and all incident reports filed after the shooting incident. Plaintiff asks that the Court order Defendants to produce these materials "in an expedited manner."

The parties here have not yet held a conference pursuant to Federal Rule of Civil Procedure 26(f), and parties are generally prohibited from seeking discovery prior to that conference. *See* Fed. R. Civ. P. 26(d)(1). Although the Court may exercise its discretion to allow early discovery, a party seeking to circumvent the general rule must show good cause for the Court to do so. *See, e.g.*, *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) (citations omitted).

In her motion, Plaintiff does not describe how any of the broad array of materials she seeks would assist in resolving her objections to certification. Courts generally disapprove of early discovery on Westfall Act certification where the moving party "does not say what facts, if

discovered, would lead to a viable theory that [the defendant] was acting outside of the scope of employment" *See Davric Maine Corp. v. U.S. Postal Serv.*, 238 F.3d 58, 68 (1st Cir. 2001).

For that matter, Plaintiff does not state any cause for early discovery, let alone at an expedited pace, except to note that Westfall Act certification questions should be decided early in litigation. However, as numerous circuit courts have recognized, discovery (early or otherwise) on matters specifically relating to Westfall Act certification is generally disfavored where no factual disputes exist. It would be inappropriate to "[p]ermit[] additional discovery when the Attorney General's certification is not based on a different understanding of the facts than [that] reflected in [the] complaint." *See Singleton*, 277 F.3d at 871 (citing *Brumfield v. Sanders,* 232 F.3d 376, 380 (3d Cir. 2000)). This is especially true where, as here, Plaintiff has failed to cite specific facts rebutting the United States' certification. *See Wuterich v. Murtha*, 562 F.3d 375, 382-83 (D.C. Cir. 2009) (citation omitted); *Gutierrez de Martinez v. D.E.A.*, 111 F.3d 1148, 1154-55 (4th Cir. 1997) ("[T]he district court may allow (in its discretion) limited discovery [on scope-of-employment questions] . . ., but should not do so if the certification, the pleadings, the affidavits, and any supporting documentary evidence do not reveal an issue of material fact."); *Garcia v. Reed*, 227 F. Supp. 2d 1183, 1189 (D.N.M. 2002) (citing, *e.g.*, *Wooten v. Hudson*, 71 F. Supp. 2d 1149, 1154 (E.D. Okla. 1999)).

In fact, although she recognizes that Westfall Act determinations "should be decided at the earliest opportunity," *see Osborn*, 549 U.S. at 252-53, Plaintiff appears to misunderstand the implications of the Supreme Court's guidance. As previously discussed, the Westfall Act is "designed to immunize covered federal employees not simply from liability, but from suit." *See id.* at 238; *see also Schrob v. Catterson*, 967 F.2d 929, 935 (3d Cir. 1992) ("[The Westfall Act reflects] Congress'[s] intent to protect federal employees from the uncertain and intimidating

task of defending suits that challenge conduct within the scope of their employ.") Although the Court may need to conduct hearings or allow limited discovery if disputed issues of fact exist as to a federal employee's scope of employment, *see Fowler*, 647 F.3d at 1241, the purposes of the Westfall Act would be frustrated if courts were to routinely allow discovery where no factual disputes are presented. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 685-86 (2009) (noting that qualified immunity, another doctrine protecting parties against suit as opposed to mere liability, exists "to free officials from the concerns of litigation, including avoidance of disruptive discovery"). Rather than providing good cause for early discovery, the purposes of the Westfall Act counsel *against* early discovery under normal circumstances.

Plaintiff has failed to state good cause for early discovery on the United States' certification under the Westfall Act. Her motion for early discovery is therefore denied.[3]

## II.     Subject-Matter Jurisdiction

The United States has substituted itself as the proper Defendant in place of the official capacity claims in Count I against Long, Leone, Pope, Grimes and Johnson, and in place of all claims against those Defendants in Counts II and III. The United States has also substituted itself as the proper Defendant in place of Stephens and Groom in Counts II and III. To the extent these claims are now brought against the United States, it seeks dismissal of Counts I and II, and partial dismissal of Count III, for lack of subject-matter jurisdiction.

A.  Legal Standard

A party may assert lack of subject-matter jurisdiction as a defense to a claim for relief. *See* FED. R. CIV. P. 12(b)(1). Such defenses come in two flavors. A "facial attack" challenges the sufficiency of the complaint, with all allegations in the complaint accepted as true. *Holt v. United*

---

[3] For this reason, the Court declines to reach the City of Oklahoma City's argument that Plaintiff's discovery requests are overly broad and not reasonably limited in scope.

*States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citation omitted). By contrast, a "factual attack" goes beyond the allegations of the complaint, challenging the alleged facts upon which subject-matter jurisdiction depends. *Id.* at 1003 (citation omitted). Although a facial attack may not rely on documentary and testimonial evidence, a court considering a factual attack on subject-matter jurisdiction may consider such evidence. *See Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292-93 (10th Cir. 2005). However, when the resolution of jurisdictional facts is intertwined with the merits of the underlying case, a court must convert the Rule 12(b)(1) motion to a Rule 12(b)(6) motion to dismiss for failure to state a claim or a Rule 56 motion for summary judgment. *See Holt*, 46 F.3d at 1003.

B. Counts I and II

Pursuant to 42 U.S.C. § 1983, Count I alleges that Defendants violated Stout's rights as secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Count II alleges that Defendants used excessive force against Stout in violation of Article 2 Section 30 of the Oklahoma Constitution. The United States contends that to the extent these claims are brought against it, such claims are barred under the principle of sovereign immunity. The United States fashions its challenge to these claims as a facial attack on the Court's subject-matter jurisdiction.

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citation omitted). Accordingly, "a party seeking to assert a claim against the government under [a general jurisdictional] statute must also point to a specific waiver of immunity in order to establish jurisdiction." *Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 1290,

1295 (10th Cir. 2009) (citation omitted). To qualify as appropriately specific, a waiver of sovereign immunity "'cannot be implied but must be unequivocally expressed.'" *Mitchell*, 445 U.S. at 538 (quotation omitted). As the party seeking to invoke the Court's jurisdiction, Plaintiff bears the burden of establishing that an appropriate waiver of sovereign immunity exists. *See Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

Plaintiff's response brief does not address the sovereign immunity question, though that in and of itself is not fatal as long as the complaint itself is sufficient. *See Fournerat v. Wis. Law Rev.*, 420 F. App'x 816, 819-20 (10th Cir. 2011) (unpublished) (observing that even if a nonmovant fails to respond to a motion to dismiss, the court must still examine the sufficiency of the complaint before granting dismissal (citing *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003))). The problem is that nothing in Plaintiff's complaint suggests that an "unequivocally expressed" waiver applies to her claims.

Plaintiff asserts that the Court has jurisdiction over Count I, the § 1983 claim, pursuant to 28 U.S.C. §§ 1331 and 1343, but both of these statutes are general jurisdictional statutes that do not include express waivers of sovereign immunity. *See Merida Delgado*, 428 F.3d at 919; *Salazar v. Heckler*, 787 F.2d 527, 528-29 (10th Cir. 1986); *Meuli v. United States*, No. 11-1044-RDR, 2011 WL 2650355, at *4 (D. Kan. July 6, 2011) (unpublished) (citing, *e.g.*, *Garcia v. United States*, 538 F. Supp. 814, 816 (S.D. Tex. 1982)). Even assuming that this claim were properly stated against the United States,[4] § 1983 itself also does not waive this immunity. *See Beals v. U.S. Dep't of Justice*, 460 F. App'x 773, 775 (10th Cir. 2012) (citing *Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000); *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th

---

[4] A § 1983 claim cannot be brought against the United States itself, *see Belhomme*, 127 F.3d at 1217, and such a claim cannot be converted to a *Bivens* claim, *see Dahn v. United States*, 127 F.3d 1249, 1254 (10th Cir. 1997) (citing *FDIC v. Meyer*, 510 U.S. 471, 484-85 (1994)). However, because the Court lacks any jurisdiction to consider the legal sufficiency of this claim, this matter is not addressed further.

Cir. 1997)). As to the state constitutional claim against the United States in Count II, nothing in 28 U.S.C. § 1367, the general supplemental jurisdiction statute cited by Plaintiff, waives the United States' immunity from suit.

Plaintiff also asserts that jurisdiction is proper under 28 U.S.C. § 1346(b), which covers claims against the United States under the Federal Tort Claims Act ("FTCA"). However, this statute does not waive the United States' sovereign immunity with respect to either federal or state constitutional claims. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under § 1346(b) for [federal] constitutional tort claims."); *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1139 (10th Cir. 1999) ("The FTCA's purpose . . . is to remove sovereign immunity as a bar to compensating people hurt by federal employees' garden-variety common-law torts."). As such, even if Plaintiff were asserting that the Court has jurisdiction over Count I or Count II pursuant to § 1346(b), those claims against the United States could not stand.

Plaintiff points to no other statutes in which the United States has waived its own immunity with respect to federal or state constitutional claims against it. *See Mitchell*, 445 U.S. at 538. Accordingly, the United States has not waived its sovereign immunity with respect to Counts I and II against the United States, and the Court therefore lacks subject-matter jurisdiction over these claims.

C. Count III

After Stout's death, Plaintiff filed an administrative claim with the United States Marshals Service. *See* (**Doc. 52 Ex. 1**), Claim for Damage, Injury, or Death. There appears to be no dispute that the Marshals Service denied this claim. However, the United States attacks the factual basis for the Court's jurisdiction over the subject matter of parts of Count III, a claim for

"negligence/wrongful death," due to deficiencies in the administrative claim. In particular, the United States seeks dismissal of Court III "[t]o the extent [it] includes claims of inadequate training, inadequate supervision, [or] failure to intervene, or seeks to hold the United States liable for the alleged negligence of the other state and local law-enforcement agencies." *See* **(Doc. 52)**, Motion to Dismiss, at 5. Plaintiff does not rebut the United States' arguments, other than to continue to assert that the United States is not a proper Defendant for this claim.

Count III itself does not expressly allege torts of negligent training or negligent supervision. Moreover, to the extent that any such factual allegations appear in Plaintiff's First Amended Complaint, those allegations specifically target the state, county, and local agencies for these purported inadequacies. *See* **(Doc. 36)**, First Amended Complaint, at 9. These allegations were filed even after the Court advised that the United States was a Defendant until further notice and that her amended complaint should reflect that fact. *See* **(Doc. 35)**, Memorandum Opinion and Order, at 3. At that time Plaintiff could have asserted in the alternative that the United States had negligently trained or supervised the individual Defendants, but she chose not to do so, and the Court will not now construe such allegations as having been brought against the United States when they were explicitly brought against other entities. Similarly, to the extent that the First Amended Complaint alleges generic "negligence of the other state and local law-enforcement agencies, the Court sees no way of construing such allegations as a claim of negligence against the United States. Since these allegations do not target the United States, that Defendant's motion to dismiss these potential claims against it in Count III is moot.

The First Amended Complaint does allege that the individual Defendants each had an opportunity and a duty to intervene to prevent the other Defendants from acting wrongfully. "Failure to intervene" is more commonly asserted as a component of a § 1983 claim against

individual defendants, *see, e.g.*, *Estate of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014), and it appears that this was Plaintiff's purpose here as well. *See* (**Doc. 36**), First Amended Complaint, at 8 (alleging failure to intervene as part of Count I). However, to the extent that Plaintiff alleges that such failure constituted negligence on the part of the United States, the Court concludes that it has jurisdiction over such a claim.

The FTCA allows a plaintiff to hold the United States liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA requires that a claimant exhaust his administrative remedies before filing a claim. *See* 28 U.S.C. § 2675(a). "This requirement is jurisdictional and cannot be waived." *Lurch v. United States*, 719 F.3d 333, 335 n.1 (10th Cir. 1983) (citation omitted). To meet the exhaustion requirements, a plaintiff must present her claim to the appropriate agency "by filing (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005) (quotation omitted). Here, the United States only challenges the first factor.

The sufficiency of the claim is analyzed pragmatically; "a claim should give notice of the underlying facts and circumstances 'rather than the exact grounds upon which [the claimant] seeks to hold the government liable.'" *Staggs v. United States ex rel. Dep't of Health & Human Servs.*, 425 F.3d 881, 884 (10th Cir. 2005) (alterations in original). Although the FTCA's notice requirements should be strictly construed, they "should not be interpreted inflexibly." *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852, 853 (10th Cir. 2005). This means that an administrative claim "need not elaborate all possible causes of action or theories of

liability," as long as the claim "notifies the agency of the facts of the incident." *See id.* at 853 (quotation omitted).

In *Staggs*, which the United States cites in support of its position, the plaintiff filed an administrative complaint accusing an Indian hospital of "at least ten deviations from the standard of care," but she did not allege any facts specifically regarding a lack of informed consent. *See id.* (alterations in original). When the appropriate federal agency denied her claim, she brought an FTCA action against the agency, but she again failed to mention lack of informed consent or any facts related to such an issue. *See id.* at 883. The trial court subsequently ruled that it lacked subject-matter jurisdiction to consider the informed-consent issue since neither the administrative claim nor the complaint raised enough facts or circumstances to suggest that the issue might underlie the plaintiff's claims. *See id.* at 884.

The Tenth Circuit affirmed, finding that "nothing in [the plaintiff's] administrative claim suggests that [she] consented to a course of treatment or remained on such a course without being informed of her options and the risks." *See id.* at 884-85. Although the plaintiff insisted that the informed-consent issue was "inherent" in the language of her claim and her complaint, the Tenth Circuit concluded that her administrative claim failed to give sufficient notice of facts and circumstances relating to that issue. *See id.*

The United States argues that Plaintiff, like the appellant in *Staggs*, has failed to give sufficient notice in her administrative claim, as nothing in that claim expressly discusses a failure to intervene. However, another case cited by the United States is more relevant. In *Trentadue*, the estate of a prisoner who hanged himself filed an administrative claim against the government, accusing prison officials of murdering the decedent. *See* 397 F.3d at 852. When that claim was denied, the decedent's estate filed an FTCA complaint that instead accused the United States of

"extreme acts of misconduct." *See id.* at 852-53. On appeal, the Tenth Circuit concluded that the estate's claim gave the United States sufficient notice that it "should investigate the prison officials' conduct" and that the facts and circumstances in the claim were consistent with those subsequently raised in the estate's complaint, even if the ultimate theory behind the claim had shifted. *See id.* at 853.

With respect to a failure-to-intervene theory of negligence, the Court finds the holding in *Trentadue* to be more germane than that in *Staggs*. In her administrative claim, Plaintiff alleges that members of the task force wrongfully shot and killed Stout. This gave the U.S. Marshals Service sufficient notice of the "underlying facts and circumstances" to allow the agency to investigate the incident, regardless of whether Plaintiff ultimately used those facts to pursue either a negligence claim or an intentional tort claim. And if the United States had sufficient notice to investigate whether the individual Defendants each acted wrongfully by shooting Stout, it inherently had sufficient notice to investigate whether, as Plaintiff alleges, the individual Defendants each failed to stop those actions. Unlike the circumstances in *Staggs*, where no facts were raised regarding a particular and specific deviation from care and the plaintiff's filings failed to even hint at this deviation, the allegation that the individual Defendants took wrongful actions necessarily put the Marshals Service on notice that these same Defendants did not halt these wrongful actions.

The present motion is limited to questioning the Court's jurisdiction over the subject matter of Count III as it pertains to the United States; the Court reaches no conclusions regarding the legal sufficiency of that FTCA negligence claim at this time. However, to the extent that such a claim is viable on a failure-to-intervene theory, the Court retains jurisdiction over it. Accordingly, the United States' motion with respect to Count III is denied as to a failure-to-

intervene theory of negligence and is denied as moot to the extent that the claim targets state, county, and local agencies' purported negligence.

### III.     Prayer for Relief

Count III, interpreted as an FTCA claim as brought against the United States, remains the only claim against that Defendant over which the Court maintains jurisdiction. In her prayer for relief, Plaintiff seeks, *inter alia*, pre-judgment interest on actual damages, punitive damages, and attorneys' fees. The United States argues in its motion to dismiss that it has not waived immunity from these requests for relief and that, indeed, it is statutorily protected from each of these forms of relief.[5] Plaintiff does not respond to this argument, thereby waiving any objection to it. *See* LCvR 7.1(g).

The Court agrees with the United States that the FTCA prohibits the awarding of punitive damages or pre-judgment interest on damages. *See* 28 U.S.C. § 2674. The Court will therefore strike Plaintiff's prayer for these forms of relief to the extent that they are sought from the United States.

The issue of attorneys' fees merits slightly more discussion. "Except to the extent it has waived its immunity, the [United States] is immune from claims for attorney's fees." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983). "The FTCA refers to attorneys' fees only once, in a provision that limits the amount an attorney can recover in a contingency fee arrangement to twenty-five percent of the total damage award." *Anderson v. United States*, 127 F.3d 1190, 1191 (9th Cir. 1997) (citing 28 U.S.C. § 2678). "This provision and its legislative history indicate that Congress viewed FTCA claims as typically involving contingency fee

---

[5] Although the United States raises these arguments in its motion to dismiss under Rule 12(b), that provision only applies to "defense[s] to a claim for relief." A prayer for relief is not, strictly speaking, a claim for relief. The Court will therefore consider the United States' arguments pursuant to Rule 12(f), which allows the Court to strike any "immaterial" matter.

arrangements, not recovery from the government." *Id.* (citation omitted). As such, several courts have concluded that the FTCA itself contains no express waiver of sovereign immunity with respect to attorneys' fees. *See id.*; *Joe v. United States*, 772 F.2d 1535, 1537 (11th Cir. 1985) (per curiam); *see also Hull ex rel. Hull v. United States*, 971 F.2d 1499, 1509-10 (10th Cir. 1992) (recognizing § 2678 as "the sole authorization for attorney's fees in FTCA actions" and concluding that this provision only allows for a portion of attorneys' fees "to be taken from the judgment itself").

On the other hand, the Tenth Circuit construes the Equal Access to Justice Act ("EAJA") as a limited waiver of sovereign immunity with respect to attorneys' fees. *Estate of Smith v. O'Halloran*, 930 F.2d 1496, 1501 (10th Cir. 1991). However, the United States correctly notes that EAJA specifically excludes "cases [against the United States] sounding in tort" from the statute's mandatory attorneys' fees award provision. *See* 28 U.S.C. § 2412(d)(1)(A). Another EAJA provision allows for the permissive awarding of attorneys' fees, but only "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." *See id.* § 2412(b). No statute specifically provides for an award of attorneys' fees under the FTCA in the manner discussed here, and the "American Rule" provides that the losing party in civil litigation is generally not liable for the prevailing party's attorneys' fees. *See FTC v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006) (citing *United States v. McCall*, 235 F.3d 1211, 1216 (10th Cir. 2000)). Therefore, § 2412(b) only allows for an award of attorneys' fees against the United States when the "bad faith exception" to the American Rule is triggered, *see id.* (citations omitted), or where Rule 11 sanctions against the United States are appropriate, *see Adamson v. Bowen*, 855 F.2d 668, 671-72 (10th Cir. 1988).

Given the contours of the American Rule, the obligation to strictly construe waivers of sovereign immunity, and Plaintiff's waiver of opposition to the United States' request, the Court will strike Plaintiff's prayer for attorneys' fees to the extent that such fees are sought from the United States under Count III. However, this holding does not prevent the Court from awarding attorneys' fees in the future pursuant to Rule 11 or the bad faith exception to the American Rule if the Court deems it appropriate to do so.

### IV.    Jury Demand

Finally, the United States seeks to strike the Plaintiff's demand for trial by jury on her remaining claim against it, arguing that FTCA actions must be tried by the Court without a jury. Although the FTCA constitutes a waiver of sovereign immunity, this waiver is conditioned on the general restriction that such actions be held as bench trials instead of jury trials. *See* 28 U.S.C. § 2402. Plaintiff does not respond to the United States' request, *see* LCvR 7.1(g), and the Court agrees that § 2402 requires this matter to be tried without a jury. Accordingly, pursuant to Rule 12(f), the Court strikes Plaintiff's jury demand as to her remaining claim against the United States.

CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's objections (**Doc. 63**) to the United States' substitution under the Westfall Act as the proper Defendant for the official-capacity claims in Count I against Long, Leone, Pope, Grimes, and Johnson, and for all claims in Counts II and III against Long, Leone, Pope, Grimes, Johnson, Stephens, and Groom, are **OVERRULED**;

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Discovery on United States' Certification (**Doc. 65**) is **DENIED**;

**IT IS FURTHER ORDERED** that the United States' Motion to Dismiss (**Doc. 52**) is **DENIED** with respect to Count III as previously set forth but **GRANTED** with respect to Counts I and II, and these latter claims against the United States are dismissed with prejudice for lack of subject-matter jurisdiction;

**IT IS FURTHER ORDERED** that Plaintiff's prayer for relief in the form of pre-judgment interest, punitive damages, and attorneys' fees is **STRICKEN** to the extent that such relief is sought from the United States; and

**IT IS FINALLY ORDERED** that Plaintiff's jury demand is **STRICKEN** as to her remaining claim against the United States.

**SO ORDERED**

_____
**UNITED STATES DISTRICT JUDGE**